Dear Leist,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
May the Legislature transfer money from a statutorily earmarkedindemnity fund, such as the Driller and Installers Indemnity Fundof the Water Resources Board, to a fund for general operatingpurposes of state government, as provided in House Bill 2272(2000 Okla. Sess. Laws ch. 402)?
 The Legislature's Authority to Transfer Funds
¶ 1 A legislative act transferring funds is valid unless it conflicts with the Constitution. "The authority of the Legislature, both the power to legislate and the limitation of that authority, is derived from the Oklahoma Constitution."Edmondson v. Oklahoma Corp. Comm'n, 971 P.2d 868, 872 (Okla. 1998). The authority of the Legislature extends to all rightful subjects of legislation and any specific grant of authority does not restrict or exclude its authority upon the same or any other subject. See Okla. Const. art. V, § 36. If there is any doubt as to the Legislature's power to act in any given situation, the doubt should be resolved in favor of the validity of the legislative act. See Draper v. State, 621 P.2d 1142, 1146
(Okla. 1980).
¶ 2 The Oklahoma Constitution provides, "the Legislature may . . . enact laws to provide for additional revenues or a reduction in revenues, other than ad valorem taxes, or transferring theexisting revenues or unappropriated cash on hand from one fund toanother[.]" Okla. Const. art. X, § 23(2) (emphasis added). The Oklahoma Supreme Court held that this section gives the Legislature express authority to enact laws transferring existing revenues or surpluses among funds. See City of Sand Springs v.Department of Pub. Welfare, 608 P.2d 1139, 1148 (Okla. 1980) (finding that Article X, § 19, which provides that no tax collected for one purpose shall ever be devoted to another purpose, was modified by Article X, § 23(2), which gives the Legislature express authorization to transfer funds).
¶ 3 In Calvey v. Daxon, 997 P.2d 164 (Okla. 2000), the Court considered the question of whether bills transferring fee-generated monies, including monies from the Waste Tire Recycling Indemnity Fund, to the Special Cash Fund, were unconstitutional for failure to meet the requirements of Okla. Const. art. V, § 33 (requiring revenue bills to be passed by a super-majority of both houses or by a vote of the people). The Court found the Constitution was not violated based, in part, on the Legislature's express authority under Article X, § 23 to transfer monies among funds. The Court noted, "Except where it encounters a specific constitutional prohibition, the Legislature has the right and the responsibility to declare the fiscal policy of Oklahoma." Calvey, 997 P.2d at 171.
 Authority to Transfer Monies from an Indemnity Fund
¶ 4 Your question specifically addresses the transfer of money in a statutorily earmarked indemnity fund to a fund used for other governmental purposes. The transfer cited in your letter as an example is Section 12 of House Bill 2272, which provides as follows: "The Director of State Finance, on July 1, 2000, shall transfer the sum of One Hundred Thousand Dollars ($100,000.00) from the Driller and Installers Indemnity Fund ("210 Fund") of the Oklahoma Water Resources Board to the Special Cash Fund of the State Treasury." 2000 Okla. Sess. Laws ch. 402, sec. 12.
¶ 5 The Special Cash Fund is a special fund created in the State Treasury, which is "subject to legislative appropriation or transfer as provided by law and shall consist of such monies as the Legislature may direct to be transferred to such fund." 62O.S. 1991, § 253[62-253]. The Driller and Installers Indemnity Fund ("the Fund") consists of licensing fees collected by the Water Resources Board from persons engaged in the commercial drilling or plugging of groundwater wells and other wells as specified in the statute. See 2000 Okla. Sess. Laws ch. 190, sec. 1(A), (B)(1) (to be codified at 82 O.S. Supp. 2000, § 1020.16[82-1020.16](A), (B)(1)).[1] The statute authorizes expenditures from the Fund as follows:
 Monies in the Indemnity Fund shall only be expended for remedial actions necessary, without notice and hearing, to protect groundwater from pollution or potential pollution from wells, or boreholes under the jurisdiction of the Board that do not meet minimum standards for construction or that have been abandoned or as may be recommended by the Well Drillers and Pump Installers Advisory Council.
Id. § 1020.16(B)(2).
¶ 6 When the Fund reaches $50,000.00, the fees are to be deposited in a separate account in the Water Resources Board Revolving Fund designated as the Well Drillers and Pump Installers Regulation Account for inspections, licensing, enforcement, education, reimbursement of per diem and travel costs for members of the Advisory Council and as otherwise necessary to implement the provisions of the Act. See id. § 1020.16(C). The Fund is excluded from budget and expenditure limitations and except as provided in subsection C (which authorizes transfers to the Drillers and Installers Regulation Account): "no monies from the Indemnity Fund shall be transferred for any purpose to any other state agency or any account of the Board or be used for the purpose of contracting with any other state agency or reimbursing any other state agency for any expenses." Id. § 1020.16(B)(2).
¶ 7 This express prohibition leads to the question of whether the Legislature may transfer money in an indemnity fund where the statute creating the fund prohibits such transfer. It is well settled that a statutory provision cannot overrule a clear and unambiguous constitutional provision (see Oklahoma ElectricCo-op v. Oklahoma Gas Electric Co., 982 P.2d 512, 518 (Okla. 1999)), that more recent enactments of the Legislature will control over prior enactments (see Milton v. Hayes,770 P.2d 14, 15 (Okla. 1989)), and that one legislature cannot bind or restrict the power of a successive legislative body (see In reOklahoma Capitol Improvement Auth., 958 P.2d 759, 774 (Okla. 1998)). The power of the Legislature over the fiscal affairs of the State is plenary, subject only to constitutional restrictions. See Boswell v. State, 74 P.2d 940, 942 (Okla. 1937). Since the Legislature has the authority to transfer funds between accounts, the transfer of funds authorized by House Bill 2272 is permissible unless the transfer conflicts with a specific constitutional provision.
¶ 8 As previously discussed, the Court has considered the constitutionality of the transfer of monies from an indemnity fund, specifically, the Waste Tire Recycling Indemnity Fund, and found that the transfer did not violate Okla. Const. art. V, §33. See Calvey v. Daxon, 997 P.2d 164 (Okla. 2000). Although not an issue in Calvey, the transfer of funds from an indemnity fund violates the Constitution if the indemnity fund constitutes a trust fund held for the benefit of identifiable beneficiaries.See Moran v. State, 534 P.2d 1282, 1288 (Okla. 1975). InMoran, the Court held that the Legislature's transfer of funds from the State Insurance Fund, consisting of premiums paid by employers to cover workers' compensation claims, to the State Board of Education violated Okla. Const. art. II, § 15, which prohibits laws that impair contractual obligations. See id. The Court found that the monies in the State Insurance Fund were not State funds, but rather constituted trust funds held for the benefit of employers and employees and that such funds were not available for general or other purposes of the State. See id.
The Court held that the attempted transfer violated the contractual rights of the employers contributing to the fund.See id.
¶ 9 The Fund, created by 82 O.S. Supp. 1999, § 1020.16[82-1020.16](A), is not a trust fund. The creation of a trust requires an intent by the party establishing the trust that the funds be held and managed for the benefit of sufficiently certain beneficiaries.See Estate of Stokes v. Stokes, 747 P.2d 300, 302 (Okla. 1987); see also A.G. Opin. 91-17 at 66-67. The Fund is not an insurance fund for the use of specific beneficiaries, but rather is an indemnity fund supported with license fees, which are to be used for remedial actions necessary to protect groundwater from pollution or as may be recommended by the Well Drillers and Pump Installers Advisory Council. See 2000 Okla. Sess. Laws, ch. 190, § 1(B)(2) (to be codified at 82 O.S. Supp. 2000, §1020.16[82-1020.16](B)(2)). When the Fund reaches $50,000.00, the fees are to be deposited in a separate account to be expended on, among other things, inspections, licensing, enforcement, and education.See id. § 1020.16(C). The Fund is not held by the State for the benefit of those paying the license fees or for any other specified beneficiaries; rather, the Fund is used for the benefit of the public in general. Section 12 of House Bill 2272, ordering the transfer of money in the Fund, did not transfer any trust funds held for the use of participating beneficiaries, as was the case in Moran. Therefore, the fund transfer is valid.
¶ 10 It is, therefore, the official Opinion of the AttorneyGeneral that:
The Legislature may transfer money from a statutory indemnityfund, other than a trust fund, to the Special Cash Fund of theState Treasury pursuant to Okla. Const. art. 10, § 23(2), whichauthorizes the Legislature to transfer monies between funds, evenif the indemnity fund statute provides that monies deposited inthe fund shall at no time become part of the general budget ofany other state agency. A statutory provision cannot overrule aclear and unambiguous constitutional provision. See OklahomaElectric Co-op v. Oklahoma Gas Electric Co., 982 P.2d 512,518 (Okla. 1999).
W.A. DREW EDMONDSON Attorney General of Oklahoma
KATHRYN BASS Assistant Attorney General
[1] The licensing fees apply to:
 All persons engaged in the commercial drilling or commercial plugging of groundwater wells, monitoring wells, observation wells, wells utilized for heat exchange purposes, including but not limited to heat pump wells and geothermal wells, and in the commercial drilling or plugging of geotechnical borings and all persons engaged in the commercial installation of water well pumps in this state. . . ."
Id. § 1020.16(A).